UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| SHARON D. THOMPSON, | ) No. CV 09-02324-VBK |
| Plaintiff, | ) MEMORANDUM OPINION ) AND ORDER |
| v. | ) ) (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

evaluated the opinions of the treating psychiatrist; (JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT ERR IN EVALUATING THE OPINION OF PLAINTIFF'S TREATING PSYCHIATRIST, OR HER MENTAL CONDITION**

In his evaluation of Plaintiff's mental residual functional capacity ("Mental RFC"), the ALJ determined that Plaintiff has severe impairments of panic attacks and depression. (AR 21.) With regard to her mental RFC, he found that Plaintiff is "moderately impaired in the ability to endure workplace pressure and interact appropriately with co-workers and supervisors - e.g., prone to occasional outbursts but able to perform the duties and simple, repetitive tasks but also complex functions as well." (AR 22.)

Plaintiff asserts error in the ALJ's determination that she has only a moderate impairment. (JS at 4, referencing AR 22, Finding 5.) Plaintiff maintains that the longitudinal treatment record supports more restrictive limitations. In particular, Plaintiff references certain longitudinal treatment notes (see JS at 5), and in particular, focuses on a "Mental Impairment Questionnaire" completed by treating psychiatrist Dr. Bong on April 5, 2007 ("Questionnaire," AR 677-680.) Plaintiff notes that Dr. Bong assessed that she would likely be absent from work, due to her mental impairments, more than three times a month. (AR 679.) Plaintiff also asserts that the ALJ could not rely

2

upon any portion of the opinions of the consultative psychiatric examiner, Dr. Walsh, who performed an examination on February 6, 2004 at the request of the Department of Social Services Disability and Adult Programs (AR 299-301) and of the State Agency reviewing physician, who completed a Psychiatric Review Technique Form ("PRTF") on March 9, 2004 (AR 302-314), because, in his decision, the ALJ discounted the findings set forth in those reports. (AR 21.)

### A. Applicable Law.

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other

treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

4

is no longer required to complete and attach a PRTF. The revised regulations provide categories for the first three of these four functional areas. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(4)). In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

**B. <u>Analysis</u>**.

While Plaintiff espouses the principle that an ALJ cannot "pick and choose" among portions of medical opinions, in fact, this is not a correct summation of the law. A treating physician's opinion, for example, is accorded controlling weight when it is supported by objective evidence in the record and is consistent with other substantial evidence in the record. 20 C.F.R. §§404.1527(d)(2), (3), 416.927(d), (2), (3)(2009); Social Security Ruling ("SSR") 96-2p. Thus, where all or part of a treating physician's opinion is contradicted by other, independently derived evidence, the ALJ may reject all or part of such opinion by setting forth specific and legitimate reasons that are supported by substantial evidence in the record. See <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001). Essentially, it is the ALJ's province to review and evaluate the evidence as a whole. Often, there may be more than one rational

interpretation of the evidence.  Thus, if the ALJ's interpretation is supported by substantial evidence, it will be upheld.  See <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).  In light of these principles, the Court will examine the evidence in the record and the conclusions from that evidence drawn by the ALJ in his written decision.

First, the ALJ observed that Dr. Bong, the treating psychiatrist, found that Plaintiff would only "seldom" have deficiencies of concentration, persistence or pace. (AR 21, 680.) Dr. Bong also found that Plaintiff would have "moderate" difficulties in maintaining social functioning. (<u>Id</u>.) Thus, the ALJ in fact <u>accepted</u> Dr. Bong's assessment of only a moderate impairment in this area of mental functioning, and incorporated that into Plaintiff's mental RFC. (AR 22.)  The ALJ did implicitly reject Dr. Bong's opinion that Plaintiff would likely miss work more than three times a month, since this limitation is not incorporated into Plaintiff's mental RFC, and, indeed, the ALJ found that the evidence in the record "does not justify the imposition of additional mental functional limitations beyond those adopted above." (AR 25.)

While Plaintiff focuses on this one, narrow assessment of Dr. Bong (e.g., projected absence from work), it is important to evaluate Dr. Bong's report as a whole, as the ALJ did in his decision.  Dr. Bong assessed that Plaintiff's prognosis was good; that she had no restriction in her activities of daily living, and, as noted, had only moderate difficulties in maintaining social functioning, and seldom had deficiencies of concentration, persistence or pace. (AR 679-680.)

A longitudinal review of the progress notes and other treatment records substantiates the ALJ's implicit rejection of Dr. Bong's

6

conclusion that she would miss work more than three times a month, or Plaintiff's assertion that she had more than moderate limitations in the area of mental functioning assessed by the ALJ. As the ALJ observed, when looked at longitudinally, Plaintiff's global assessment of functioning ("GAF") score went from a low score of 40 on October 18, 2005 to 60 on March 20, 2006. (AR 24-25.) Although this Court has often commented that a GAF score is, by itself, not indicative of a finding of disability, when looked at longitudinally, as in this case, the improvement to a score which generally indicates only moderate mental functional limitations is significant and relevant.

The ALJ also noted that Plaintiff has not suffered three or more episodes of decompensation which have lasted two weeks or more or resulted in hospitalization or significant alterations in her medication, or the need for psychologically structured settings, as would be required to find equivalence to a marked limitation. (See AR 22, citing §12.00C.4 of the Listings.) Indeed, longitudinal records between October 2005 and May 2006 from Palmdale Mental Health showed that Plaintiff was "improved," had a stable mood, and that her medications were assisting her condition. (AR 614, 617, 618, 621.)

The ALJ also relied upon the PRTF of the State Agency physician who found only moderate limitations in Plaintiff's ability to maintain social functioning. (AR 21, 313.)

While Plaintiff does not assert that the ALJ erred in rejecting portions of the conclusion of the psychiatric consultative examiner, Dr. Walsh, who opined that Plaintiff would have difficulty concentrating in a persistent manner or for a long period of time in a worklike setting (see AR at 301), the ALJ rejected these conclusions because Dr. Walsh saw no such deterioration at the time of his

1 | examination. (AR 85.)

2 | In determining the limiting effects of Plaintiff's mental impairment, the ALJ also properly examined Plaintiff's activities of daily living. (AR 23.) In that regard, the ALJ observed that Plaintiff can do some light chores, cook using a microwave, use public transportation, and go shopping. (AR 23.) The ALJ relied upon Plaintiff's own statements that she can follow written instructions "ok" and follow spoken instructions "pretty well." (Id.) These are relevant factors to be weighed in the determination of the extent of limitations in social functioning. Indeed, the ALJ also relied upon the statements of Plaintiff's cousin, who indicated that Plaintiff gets along with authority figures "sometimes very well." (AR 23, 225.)

All of this evidence was evaluated, as a whole, by the ALJ, who was certainly not required to blindly accept Dr. Bong's conclusion that Plaintiff would miss work three times a month. His implicit rejection of that conclusion, which would have substantiated a finding of disability, is supported by substantial evidence in the record, which this Court has summarily reviewed. Thus, the Court finds no error in the ALJ's rejection of that portion of Dr. Bong's opinion, as it was not supported by the weight of the evidence in the record, all of which was explicitly and clearly discussed in the decision.

For the foregoing reasons, the Court finds that the decision of the ALJ must be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: February 8, 2010          /s/
                                 VICTOR B. KENTON
                                 UNITED STATES MAGISTRATE JUDGE